IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES J. JAYROE, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:25-CV-2408-G-BK |
| | § | |
| PROGRESSIVE CASUALTY INSURANCE | § | |
| COMPANY | § | |
| DEFENDANTS. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* civil action was automatically referred to the undersigned United States magistrate judge for pretrial management. Doc. 2. Before the Court for findings and a recommended disposition is *Plaintiff's Motion to Remand to State Court*.[1] Doc. 6. Defendant has filed a response, Doc. 9, and Plaintiff has filed a reply, Doc. 10. Upon review of the relevant pleadings and applicable law, the motion should be **DENIED**.

**I. BACKGROUND**

Plaintiff Charles J. Jayroe ("Jayroe") filed the instant suit on July 30, 2025, asserting claims against Defendant Progressive Casualty Insurance Company ("Progressive") in Texas state court for breach of contract, violations of Texas Insurance Code §§ 541.060 and 542.003, violations of the Texas Deceptive Trade Practices Act, and a common law bad faith and breach

---

[1] A motion for "remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).

of the duty of good faith and fair dealings. Doc. 1-1 at 4-5. On September 2, 2025, Jayroe filed a motion for default judgment in the state court and Progressive filed its original answer. Doc. 1-1, *passim*. While Jayroe's motion for default judgment was still pending, Progressive subsequently filed the notice of removal *sub judice*, asserting diversity jurisdiction.[2] Doc. 1. In response, Jayroe now moves for remand to the 160th District Court of Dallas County, Texas. Doc. 6.

## II. ANALYSIS

A defendant may remove a state court action if the action is one that could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a). Unless otherwise provided by statute, a federal court's subject matter jurisdiction requires (1) a federal question arising under the Constitution, a federal law, or a treaty, *see* 28 U.S.C. § 1331, or (2) complete diversity of citizenship between adverse parties and a good faith amount in controversy exceeding $75,000, *see* 28 U.S.C. § 1332. The removing party bears the burden of establishing jurisdiction. *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001). In a civil action, the notice of removal must be filed within 30 days after the receipt by the defendant through service. *See* 28 U.S.C. § 1446(b).

Here, Jayroe does not contest the parties' diverse citizenship or that the amount in controversy exceeding $75,000. Instead, he argues that he was entitled to a default judgment in state court, and Progressive's removal attempt did not divest the state court of jurisdiction. But Jayroe's suggestion that because this case had been ripe for default judgment in the state court, it may not be removed to federal court, is without legal support.

---

[2] State court records available online (of which this Court takes judicial notice) confirm that the state court had not yet acted on the motion for default judgment at the time of removal.

First, Jayroe's premise that he is entitled to default judgement is flawed. In Texas, if a defendant is required to answer, a plaintiff may obtain default judgment against the defendant if they have not filed an answer. TEX. R. CIV. P. 239. But when, as here, a defendant files its answer before the state court <u>enters</u> a default judgment, the plaintiff is no longer entitled to a default judgment.

Second, Plaintiff's suggestion that removal by Progressive would not operate to dispose of a pending default judgement motion is equally flawed. "When a case is removed[,] the federal court takes it as though everything done in the state court had in fact been done in federal court." *Murray v. Ford Motor Co.*, 770 F.2d 461, 464 (5th Cir. 1985). Thus, it is irrelevant to the issue of removal whether a defendant files an answer after a plaintiff has already moved for default judgment, as the motion for default judgment would still be pending in the federal district court upon removal. Here, however, the motion for default judgment was rendered moot by Progressive's answer, just as if the case was still pending in state court.

Finally, Jayroe's argument that Progressive's notice of removal was not filed within the 30 days required by 28 U.S.C. § 1446(b), lacks factual support. Per Jayroe's own filings, Progressive was successfully served on August 8, 2025. Doc. 6 at 8. Progressive filed its notice of removal on September 5, 2025. Doc. 6 at 38-39. The span between both days is 28 days and within the 30-day period for removal. Therefore, Progressive's notice of removal was timely filed under 28 U.S.C. § 1446(b).

### III. JAYROE'S FILINGS CITE TO NONEXISTENT, AI-GENERATED AUTHORITY

The Court's review of Jayroe's filings reveals that Jayroe has cited multiple nonexistent or "hallucinated" legal cases, indicative of reliance on Artificial Intelligence (AI) or other Large Language Models to prepare his filings. For example, in his motion to remand, Jayroe cites

*Villatoro v. GWL Cmt. Mgmt.*, LLC, 2013 WL 12101130 (S.D. Tex. Jan. 22, 2013), which does not exist. *See* Doc. 6 at 3. In fact, the Westlaw citation leads to ECF *Hopwood v. Sunrise Ford, Inc.*, No. 2:12-CV-14299-KMM, 2013 WL 12101130 (S.D. Fla. Apr. 29, 2013), which does not involve the issue of removal jurisdiction and instead concerns a motion for summary judgment. Jayroe's citations to *Ortiz v. General Motors Corp.*, 2008 WL 2620736 (N.D. Tex. June 30, 2008) and *Cowart v. AVIK Services*, No. 3:19-CV-00101, 2019 WL 1745988 (S.D. Tex. 2019) are similarly problematic. *See* Doc. 6 at 3; Doc. 10 at 4.

"It is no secret that generative AI programs are known to 'hallucinate' nonexistent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and *pro se* litigants have cited such fake, hallucinated cases in their briefs." *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025) (cited source omitted); *see also Boggess v. Chamness*, No. 6:25-cv-64-JDK-JDL, 2025 WL 978992, at *1 (E.D. Tex. Apr. 1, 2025) (Kernodle, J.) (The "[p]laintiff's citation to a hallucinatory case was likely generated via artificial intelligence and violates this Court's Local Rule CV-11(g), which makes clear that 'generative artificial intelligence tools may produce factual and legal inaccuracies and reminds attorneys that they must verify the information that they submit to the court.'" (quoting *Gauthier v. Goodyear Tire & Rubber Co.*, No. 1:23-CV-281, 2024 WL 4882651, at *2 (E.D. Tex. Nov. 25, 2024) (Crone, J.)).

Here, the Court's local civil rules require litigants to disclose the use of Generative AI:

1. A brief prepared using generative artificial intelligence must disclose this fact on the first page under the heading "Use of Generative Artificial Intelligence." If the presiding judge so directs, the party filing the brief must disclose the specific parts prepared using generative artificial intelligence.

2. "Generative Artificial Intelligence" means a computer tool (whether referred to as "Generative Artificial Intelligence" or by another name) that is capable of generating new content (such as images and text) in response to a submitted prompt (such as a query) by learning from a

4

       large reference database of examples.

    3. A party who files a brief that does not contain the disclosure required by subsection (f)(1) of this rule certifies that no part of the brief was prepared using generative artificial intelligence.

N.D. TEX. LOC. CIV. R. 7.2(f)(1)-(3). While this rule does not forbid the use of tools like Generative AI, it requires that parties disclose such use, which Jayroe failed to do.

    Further, such conduct violates Federal Rule of Civil Procedure 11. *See* FED. R. CIV. P. 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that . . . the claims, defenses, and other legal contentions are warranted by existing law. . ."). Under Rule 11, all parties, including *pro se* litigants, must "confirm the existence and validity of, the legal authorities on which they rely." *Park v. Kim,* 91 F.4th 610, 615 (2d Cir. 2024). This is because "the central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

    Jayroe's filings—built on AI-generated cases that stand for legal propositions in direct contravention of actual case law—are "the epitome of baseless." *Willis v. U.S. Bank Nat'l Ass'n as Tr., Igloo Series Tr.*, No. 3:25-CV-516-BN, 2025 WL 1224273, at *3 (N.D. Tex. Apr. 28, 2025) (Horan, J.) (citing *Sanders*, 176 Fed. Cl. at 168). And while courts afford *pro se* litigants' considerable leeway, that does not relieve them of their obligation under Rule 11 to confirm the validity of all cited legal authority. *Sanders*, 176 Fed. Cl. at 169; *cf. id.* ("Beyond the waste of resources and the violation of her Rule 11 obligations, [the plaintiff's] unquestioning reliance on AI hindered her own ability to effectively represent herself. Misled by the fake cases, [the plaintiff] cost herself an opportunity to make the best possible arguments in support of her claim for relief.").

**Accordingly, Plaintiff is admonished that going forward, failing to comply with the notice requirements set out in Local Civil Rule 7.2(f)(1)-(3) or filing pleadings with citations to nonexistent cases may result in the imposition of sanctions, including the striking of filings, the imposition of filing restrictions, monetary penalties, or dismissal of this action.**

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand fails because Progressive's removal satisfied the statutory requirements. Therefore, *Plaintiff's Motion to Remand to State Court*, Doc. 6, should be **DENIED**.

**SO RECOMMENDED** on October 27, 2025.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).